### BELL v. UNITED STATES.
### No. 6121.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 2, 1950.

Decided Nov. 8, 1950.

As Corrected Jan. 26, 1951.

Writ of Certiorari Denied Feb. 26, 1951.

G. C. A. Anderson, Baltimore, Md. and George L. Hart, Jr., Washington, D. C. (Anderson & Barnes, Baltimore, Md., on the brief), for appellant.

Norman P. Ramsey, Asst. U. S. Atty., Baltimore, Md. (Bernard J. Flynn, U. S. Atty., Baltimore, Md., on the brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

Benjamin Bell was indicted in three counts under Section 145 (b) of the Internal Revenue Code, 26 U.S.C.A. § 145(b), for attempting to defeat and evade a large part of the income and victory tax owing by him to the United States for the years 1943, 1944 and 1945 by filing false and fraudulent returns for each year wherein he knowingly understated his net income and the amount of the tax. It was charged that for the year 1943 he reported a net income of $11,135.39 and a tax of $2,912.28 whereas his income was $69,836.83 and his tax $41,125.84; and for the year 1944 he reported a net income of $13,887.71 and a tax of $3,378.96 whereas the income was $41,115.81 and the tax $18,771.73; and for the year 1945 he reported a net income of $18,667.14 and a tax of $5,593.57 whereas the income was $25,203.85 and the tax $8,940.28.

He was tried and convicted in a jury trial in the District Court and sentenced to a fine of $10,000 and imprisonment for six months on the first count; $5,000 and six months imprisonment on the second count; and $2,500 and six months imprisonment on the third count, the sentences of imprison-

ment to run concurrently and the fines to be cumulative.

The government's case consisted in part of estimates of the net income of the defendant in the taxable years based upon calculations of his net worth at the beginning and end of each year derived from available records, and also the statements of the defendant to the revenue agents who investigated the case. The defendant offered no evidence whatsoever on his own behalf and bases his appeal mainly on the grounds (1) that a conviction of tax evasion may not be based on a mere increase in net worth and therefore the court erred in refusing the defendant's motion for a directed verdict of not guilty; and (2) that the net worth statements for the years in question were erroneously admitted in evidence over the objection of the defendant because (a) they were replete with errors; (b) because the agent in preparing them ignored the records of the defendant and the records of a corporation controlled by the defendant, which purported to show his income; and (c) because the court made numerous errors in restricting the scope of the cross examination of the government's agent, and in the charge to the jury.

Since the defendant offered no witnesses on his behalf although he employed accountants who kept the books of the corporation and an auditor who conferred with the revenue agents, the following resume of the facts is necessarily based upon the evidence produced by the United States. Bell was an auctioneer. He had carried on the business since 1933 at 722 13th St., N. W. Washington, D. C., through a corporation called Washington Art Galleries and Auction Rooms, of which he was the virtual owner. He was also the sole owner in his personal capacity of an auction business for used furniture, which was carried on in Alexandria, Va., under the name of Mt. Vernon Galleries. The business at this location was closed and removed to the 13th Street store of the corporation in Washington in November, 1942. During the years 1943 to 1945 under investigation, Bell continued to use the name of the Mt. Vernon Galleries to denominate his personal busi-

ness in his personal income tax return and reported the net income therefrom in addition to the salary and dividends which he drew from the corporation. Bell kept no books of account or records of the income of his individual business except his bank deposit book, in which some descriptive entries were made, his personal check book and certain cancelled checks; but the corporation kept books which included a cash book, a journal and a ledger; and the ledger contained separate accounts which purported to show transactions between the corporation and Bell, and between the corporation and the Mt. Vernon Galleries respectively. There were, however, no records except in a minority of instances to support the entries on the books of the corporation. There were only 50 or 60 invoices during the period 1943 to 1945 covering the consignment of goods for sale and the commissions paid thereon, which varied in amount from time to time; and except for certain cancelled checks there were no other documents or cash register tapes to support the entries in the books. Moreover, the entries in the books except those in the cash book, were not made daily; but the entries in the journal and ledger were made some time during the year from the cash book, check books and other data.[1]

An investigation of the income tax liabilities of the defendant during the years in question was instituted in March, 1946 by Charles H. Knight, a special internal revenue agent, who interviewed the defendant and learned from him some things in respect to the nature of his business and his investments. His business records were made available to the agent. Knight had been connected with the Bureau of Internal Revenue in the statistical section of the Corporation Tax Division since 1938, had

secured a degree in accountancy and had been working on books and accounts in income tax matters since 1940. He concluded from his investigation that the corporate books and other data submitted to him by the defendant did not reveal the taxable income of the defendant because the corporate books were kept on a fiscal year basis whereas Bell's income was reported on the calendar year basis and especially because of the deficiencies of the corporate records in support of the entries on the corporate books above described.

These inadequacies led the agent to prepare a net worth statement to ascertain Bell's true income for the years in question. The defendant not only conducted an auction business but also dealt in securities and in real estate. Accordingly, the agent made an extended examination of real estate records, bank records, stockbrokers' records, Treasury Department records, Insurance Company records, mortgage and lending institution records, in order to ascertain the defendant's assets and liabilities. From this data he prepared a net worth statement showing the total assets of the defendant, including cash in bank,[2] United States bonds, stock, real estate, loans receivable, life insurance and other investments amounting to a total of $129,991.17, and liabilities consisting of mortgages on real estate and reserve for depreciation in the aggregate sum of $47,722.20, or a net worth on December 31, 1942 of $82,218.97.

A copy of this statement was made available to Bell's accountant. Bell made no claim at the time that he possessed other assets than those shown on the statement and he offered no evidence at the trial to contradict this statement of his net worth at the beginning of the period under examination.

---

1. The entries in the cash book showed only receipts and were quite informal and devoid of explanation. Typical of the entries is the following:

| Jan. 2 1943 | Johnson | $50.00 |
| | Elizata | 125.00 |
| | Kent | 652.30 |
| | Guest | 12.50 |
| | | 839.80 |

2. The item of cash in banks included monies in the name of the wife and children, since it appeared from the defendant's statement that they had no independent source of income.

By resort to similar records, the agent found Bell's net worth at the end of 1943, 1944 and 1945 to be $141,208.48, $175,950.-06 and $201,482.78 respectively; and by subtracting the net worth of the preceding year the increases in net worth during the taxable years were found to be $58,989.51, $34,741.58 and $25,532.72 respectively.

In order to find the taxable income for these years, the disbursements of the taxpayer for living expenses, taxes, insurance premiums and miscellaneous expenses were added and the allowable deductions from income and the non-taxable long term gains were subtracted so that the taxable net income for the years in question was found to be $69,836.83, $40,615.81 and $24,703.85 respectively.

In order to make certain that the increases in net worth during these years constituted earnings of the taxpayer, Bell was questioned by the agent as to gifts or inheritances which he might have received. He told the agent at his first interview that he had received no gifts or inheritances. Six months later at a second interview he told the agent that his mother customarily gave his wife $4,000 on their wedding anniversaries and a like amount to each of the three children on their respective birthdays during the years in question. However, in his income tax returns Bell claimed his mother, his wife and his three children as dependents. At the trial of the case no testimony was offered and no records were produced by the defendant as to these gifts.

The statement prepared by the agent showed that the greatest increase in net worth during the period under examination was in real estate. At the end of 1942 Bell owned real estate in the sum of $77,546.57. This item was increased to $138,761.20 at the end of 1943, $147,887.24 at the end of 1944, and $219,220.91 at the end of 1945. The testimony as to the source of the funds with which Bell increased his real estate holdings has an important bearing upon the sufficiency of the proof to take the case to the jury. In 1943 Bell purchased real estate in Atlantic City for the sum of $45,038.76 and paid for it with two checks on his personal bank account in the aggregate sum of $5,188.76 and one check for $39,850 on the bank account of his corporation which sum Bell had deposited to the corporation's credit. When asked as to the source of this money Bell told the agent that he had gotten it in the form of a loan from his mother who paid it to him in cash. No check or promissory note or other record evidence of the loan was shown to the agent or produced at the trial. Bell told the agents that no interest on the loan had been paid and he continued to list his mother as a dependent in his tax returns for 1944 and 1945.

In 1943 the property No. 9707 Georgetown Road in Washington was purchased in the name of Bell's wife for $16,175.87 with funds taken from her account, and the title was taken in her name. The money, however, was deposited in her account by Bell. She was listed in his tax returns as a dependent and filed no tax return herself. In 1944 the adjoining property was acquired under similar circumstances for $9,126.04 and placed in the name of Mrs. Bell.

In 1945 Bell sold the Atlantic City property for $75,000 and bought a building at 1808 Adams Mill Road in Washington for $100,622.43, paying the difference from his personal and corporate bank accounts. In 1945 he purchased a one-third interest in the property No. 7101 Georgetown Road for the sum of $15,750. The net worth statements show no reduction of the other assets or increase of liabilities sufficient to cover the increase in the taxpayer's real estate.

The defendant makes the contentions that the evidence of net worth was inaccurate and lacking in probative force, and was therefore inadmissible, and that the prejudicial statements of the defendant should not have been taken into consideration because a conviction of crime cannot be sustained by extra judicial admissions alone without independent proof of the corpus delicti. It is said in the first place that the foundation statement at the beginning of the period on December 31, 1942 was inaccurate because it did not take into account currency in the hands of Bell and

his wife at the end of 1942, the amount due him by the corporation on December 31, 1942, or debts due him at the end of the year; and also failed to include a liquidating dividend of $3,708.49 received by him during the year, and a credit of $3,021.72 due him by his stockbroker at the end of the year.

■ An examination of the record indicates that the probative force of the evidence relating to the net worth of the taxpayer at the beginning of the period under examination is not undermined by these criticisms. The amount. of currency undeposited and in the hands of the defendant and his wife on December 31, 1942 was small, according to Bell's statement, and could not be determined when the investigation started in 1946. The charge that the amount due Bell by the corporation was stated as of October 31, 1942 instead of December 31, 1942, springs from the fact that the earlier date was the end of the corporation's tax year. This circumstance, however, tended to benefit rather than injure the defendant because the books showed that the amount of this item was decreased by debits in the defendant's account in the subsequent two months. The evidence shows clearly that Bell was asked whether he owed any money and the net worth contained a statement of all the liabilities which the agent could discover. With respect to the two other debit and credit items it is sufficient to say that the evidence shows that they did not relate to the year 1942. In short, these criticisms of the basic opening statement, considered separately or together, furnish no ground for its exclusion from the jury. The agent testified that he had found no evidence or intimation of other assets which he failed to include and his statement was furnished to the defendant's accountant and was not challenged.

■ It is further contended that the net worth statements at the end of the years 1943, 1944 and 1945 are so replete with errors that no verdict could be based upon them. All of these alleged defects have been examined and found to be insufficient to justify the exclusion of the statements from the jury. It is sufficient to say in this opinion that in each instance there is evidence to support the government's figures, or the inaccuracies are too insignificant to materially affect the final result.

■ There is no substance to the defendant's contention that the net worth statement is so incredible as to be inadmissible because it discloses profits that could not possibly have been earned upon the small inventory of $8,650 shown on the corporation's books. The profits on an auction business are made for the most part on the sale of goods of other persons and not upon the profit to the auctioneer. If the defendant had kept invoices of the goods consigned to him for sale, and records of the commissions on the sales which, according to his statement, varied from 18 per cent. to all that the traffic would bear, an accurate account of these profits from his auction business could have been made, but no such records were available.

■ Bearing this evidence in mind and the complete failure of the defendant to controvert it, and having regard for the rule that evidence must be taken in the light most favorable to the government in considering its sufficiency,[3] we have no doubt that the submission of the case on the comparison of the taxpayer's net worth at the beginning and end of the tax years was justified, and that the evidence was sufficient to support a verdict of guilty. An estimate of the taxpayer's net worth as the means of determining his income is resorted to in the absence of accurate records which it is his duty under the statute to make and to preserve, and by its very nature it is an approximation; but it has been held in this and other jurisdictions to be an appropriate method to support a criminal prosecution under the statute,[4] and the absence of proof of the exact amounts of

3. United States v. Manton, 2 Cir., 107 F. 2d 834, 839; Jelaza v. U. S., 4 Cir., 179 F.2d 202, 204.

4. Jelaza v. U. S., 4 Cir., 179 F.2d 202, 204; U. S. v. Chapman, 7 Cir., 168 F.2d

997; Bryan v. U. S., 5 Cir., 175 F.2d 223; U. S. v. Fenwick, 7 Cir., 177 F.2d 488; U. S. v. Johnson, 319 U.S. 503, 517, 63 S.Ct. 1233, 87 L.Ed. 1546.

unreported income is not fatal if there is substantial evidence tending to prove the defendant's guilt beyond a reasonable doubt.

■ The defendant, pointing out that the government's case against him consists of the net worth statements and his own admissions, contends that the case must fall on the ground that the net worth statements are insufficient in themselves to prove his guilt and that in the absence of proof of the corpus delicti, a conviction of crime may not be based solely on the confessions or admissions of the defendant. This argument assumes that the net worth statements in themselves furnish no substantial evidence whatsoever of the corpus delicti in this case; but is not true, as we have seen. Moreover, the rule does not require that the corpus delicti be completely shown by evidence aliunde defendant's confessions, but admits the confessions where other substantial evidence of the crime is shown, and thereupon both the statements of the defendant and the independent evidence must be taken into consideration by the jury in determining whether guilt is proven beyond a reasonable doubt. In Daeche v. U. S., 2 Cir., 250 F. 566, 571, cited with approval in Warszower v. U. S., 312 U.S. 342, 345, 61 S.Ct. 603, 85 L.Ed. 876, it was said: "* * * The corroboration must touch the corpus delicti in the sense of the injury against whose occurrence the law is directed; in this case, an agreement to attack or set upon a vessel. Whether it must be enough to establish the fact independently and without the confession is not quite settled. Not only does this seem to have been supposed in some cases, but that the jury must be satisfied beyond a reasonable doubt of the corpus delicti without using the confessions, before they may consider the confessions at all. * * * But such is not the more general rule, which we are free to follow, and under which any corroborating circumstances will serve which in the judge's opinion go to fortify the truth of the confession. Independently they need not establish the truth of the corpus delicti at all, neither beyond a reasonable doubt nor by a preponderance of proof." See also, Yost v. U. S., 4 Cir., 157 F.2d 147, 150; Forte v. U. S., 68 App.D.C. 111, 94 F. 2d 236.

■ In this case there is substantial evidence outside of Bell's statements to indicate his guilt. It consists of the increase in his net worth during the taxable years, the absence of personal records or books of account, and the inadequacy of the corporate records to show fully either its transactions or those of the defendant; and this body of testimony derives support from the defendant's failure to offset or explain the discrepancy through his employees either during the agent's investigation or the trial in court. It is true that the burden of proof resting upon the government does not shift during the progress of a criminal case but when in the trial of charges of income tax evasion discrepancies between the taxpayer's returns and his actual income are indicated by the government's proof, the failure of the defendant to offer explanation in any form may be considered by the jury in finding its verdict. In Rossi v. U. S., 289 U.S. 89, 91, 53 S.Ct. 532, 533, 77 L.Ed. 1051, the court said: "The general principle, and we think the correct one, underlying the foregoing decisions, is that it is not incumbent on the prosecution to adduce positive evidence to support a negative averment the truth of which is fairly indicated by established circumstances and which, if untrue, could be readily disproved by the production of documents or other evidence probably within the defendant's possession or control." See also, Jelaza v. U. S., 4 Cir., 179 F.2d 202; U. S. v. Hornstein, 7 Cir., 176 F.2d 217, 220; Bradford v. U. S., 5 Cir., 130 F.2d 630.

In addition, when we come to determine the sufficiency of the evidence for the submission of the case to the jury, we must take into consideration defendant's statement that his mother, who was dependent on him for support, furnished him with $39,850 in cash in 1943 to enable him to buy the Atlantic City property.

■ The defendant relies principally upon Bryan v. U. S., 5 Cir., 175 F.2d 223, and U. S. v. Fenwick, 7 Cir., 177 F.2d 488, in both of which it was held that evidence

based on the net worth theory was insufficient to support a conviction of attempting fraudulently to evade the income tax, since the government's case did not exclude the reasonable possibility that the defendant had other assets at the beginning of the period than those shown by the government's statement; and the court directed a verdict saying that the evidence, being circumstantial, must exclude every reasonable hypothesis except that of the defendant's guilt. But we cannot follow these decisions since it is obvious that they are based upon their particular facts and they do not relieve us from the duty of appraising the sufficiency of the evidence in the case before us. That responsibility does not include a finding as to whether the defendant is guilty beyond a reasonable doubt. When a motion for a directed verdict of acquittal is made in a criminal case, the sole duty of the trial judge is to determine whether there is substantial evidence which, taken in the light most favorable to the United States, tends to show that the defendant is guilty beyond a reasonable doubt. The possibility that a jury may have a reasonable doubt upon the evidence as to the guilt of the defendant is not the criterion which determines the action of the trial judge. The decision on that question is for the jury to make and the rule is the same whether the evidence is direct or circumstantial. Curley v. U. S., 81 U.S.App. D.C. 389, 160 F.2d 229; Abrams v. U. S., 250 U.S. 616, 619, 40 S.Ct. 17, 63 L.Ed. 1173; Pierce v. U. S., 252 U.S. 239, 251, 40 S.Ct. 205, 64 L.Ed. 542; Yoffe v. U. S., 1 Cir., 153 F.2d 570, 573; Roberts v. U. S., 5 Cir., 151 F.2d 664; U. S. v. Manton, 2 Cir., 107 F.2d 834, 849. In Curley v. U. S. the court said, 160 F.2d at page 232: "The true rule, therefore, is that a trial judge, in passing upon a motion for a directed verdict of acquittal, must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt.".

The defendant further contends that the District Judge made numerous errors in ruling upon the admissibility of testimony. Most of these rulings occurred during the examination of the government's agent, when the defendant, having made no opening statement of his case to the jury and having obviously decided to offer no evidence on his own behalf, endeavored to prove his case through cross examination of the witnesses and was not allowed, in a number of instances, to go outside the scope of the direct examination. The net worth statement was objected to as inadmissible because all of the persons who cooperated in setting it up were not presented to the court; but the supporting evidence for the items in the account were before the jury and the agent verified the statement as an accurate summary of the figures. Other questions related to such matters as what the agent found in the defendant's safe deposit box, what the bank deposit book and certain check books and stubs showed as to the defendant's income, the contents of an unanswered letter written by the defendant to the agent, etc. etc.

Questions of this kind must necessarily be left largely to the wise discretion of the trial judge especially in a case involving many factual details that may be easily confused or obscured in the minds of the jury. Of course it is the duty of the judge in a criminal case to allow full and free examination of the government's witnesses in order that all relevant facts may be disclosed; but in the federal courts for over a hundred years the rule has been that the scope of cross examination is limited to subject matter referred to during the examination in chief; and if a party wishes to examine a witness regarding other matters, he must do so by making the witness his own and by calling him as such in the subsequent progress of the trial. Philadelphia & Trenton R. R. Co. v. Stimpson, 14 Pet. 448, 461, 39 U.S. 448, 461, 10 L.Ed. 535; Moyer v. Aetna Life Ins. Co., 3 Cir., 126 F.2d 141, 143; Kincade v. Mikles, 8 Cir., 144 F.2d 784, 787; Wigmore on Evidence, (3d Ed.), §§ 1885–1888. See Hider v. Gelbach, 4 Cir., 135 F.2d 693, 695. This rule has been the subject of some attack; and an attempt was made by Advisory Committee when formulating the Rules of

Civil Procedure in 1936 and 1937 to change the rule to allow cross examination upon all the material and pertinent issues of the action. The Supreme Court in rejecting these proposals and in adopting Rule 43(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. Rule 43(b), as it now stands, indicate that "the historic limitation upon the scope of cross examination to the subject matter of the direct examination is still to be enforced in the federal courts." Moyer v. Aetna Life Ins. Co., 3 Cir., 126 F.2d 141, 143; Wigmore on Evidence (3rd Ed.) § 1888. Nothing to the contrary appears in the Federal Rules of Criminal Procedure.[5]

■ Our examination of the record in this case shows that the District Judge allowed much latitude in the cross examination of the government's witnesses as to matters covered by direct testimony, and it was only when the questions were improper as to form, or when they touched upon subjects not brought out in direct examination or not within the purview of the witness' knowledge that they were ruled out. At the same time the defendant was reminded that he would have ample opportunity to offer any evidence which he deemed favorable to him as part of his defense. We find that the defendant was not impeded in making his defense and that there was no error in the rulings of the trial judge upon the evidence. A similar ruling was made under like circumstances in U. S. v. Hornstein, 7 Cir., 176 F.2d 217, 220.

■■ The defendant further contends that the judge's charge contained certain factual inaccuracies which were detrimental to his case. It is objected that the judge attributed to the revenue agent statements as to the inadequacy of the books more sweeping than the agent actually made; but the charge was not misleading in this respect when considered in relation to the whole and in connection with the judge's warning to the jury that they should

determine for themselves whether the agent's rejection of the books was made upon a reasonable basis. Other charges of inaccuracy relate to matters not called to the attention of the judge before the jury retired to consider its verdict. We are satisfied from our examination that they were not misleading, especially as the jury were told at the outset that the comments of the judge upon the evidence were advisory only and should be given only such attention as the jury might think that they deserved.

We find no error, and the judgment of the District Court is therefore affirmed.

5. Rule 26 of the Federal Rules of Criminal Procedure, 18 U.S.C.A. Rule 26, states as follows: " * * * The admissibility of evidence and the competency and privileges of witnesses shall be governed, except when an act of Congress or these rules otherwise provide, by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience."