**UNITED STATES of America**

v.

**Wilfred Thornton WATTERWORTH.**

**Crim. No. 24147.**

United States District Court
D. Maryland.
May 2, 1958.

Leon H. A. Pierson, U. S. Atty., and Martin A. Ferris, Asst. U. S. Atty., Baltimore, Md., for the United States.

Harry Kairys, Baltimore, Md., and Robert T. Reynolds, Washington, D. C., for defendant.

R. DORSEY WATKINS, District Judge.

This criminal proceeding arises out of an indictment brought against the defendant under Section 1326 of Title 8 U.S.C.A., charging in one count that as an alien citizen of Canada, he had been arrested and subsequently deported from the United States on June 12, 1957 and thereafter was found in the United States on September 11, 1957 at Baltimore, Maryland, without having obtained the permission of the Attorney General to re-apply for admission to the United States as required by law. The right to a trial by jury was waived and the defendant proceeded to trial by the court. At the conclusion of the Government's evidence the defendant moved for judgment of acquittal, first, on the ground that there was a material variance between the indictment and the proof as to the date the alleged deportation occurred and, secondly, upon the ground that the proof offered was inadequate to establish that a final and valid order of deportation had ever been entered against the defendant. The court heard oral argument and then allowed the parties time for the filing of briefs. The defendant offered no evidence.

The first ground for the motion for acquittal was abandoned by the defendant in the brief submitted by him,[1] thus leaving for consideration only the question of whether or not there was a valid, final order of deportation outstanding against the defendant at the time of his departure from the United States. The answer to this question requires an application of the immigration and naturalization regulations then in effect to the facts developed by the testimony and exhibits.

The evidence shows that the defendant, a native and citizen of Canada, arrived in the United States from Canada at Washington, D. C. on December 10, 1956 and received a six month visitor visa; that he was apprehended in Florida by the border patrol after he had been working in the United States in violation of the conditions of his visitor visa; that at the time of his apprehension, he was granted voluntary departure; that he did not effect such departure, and on April 26, 1957, at Tampa, Florida, a hearing was held by the Immigration and Naturalization Service to determine his deportability. The hearing was presided over by a special inquiry officer referred

---

1. "Accordingly, defendant submits that the Court's initial denial of his first motion to acquit was correct, and that the variation herein between indictment and tender of proof neither injured his substantial rights nor exposed him to double jeopardy." Defendant's brief, p. 3.

to also as a hearing officer. The defendant-respondent was not represented by counsel at said proceedings, although duly informed of his right to be so represented. In the course of the proceedings and hearing, defendant-respondent admitted deportability, but applied for the discretionary relief of voluntary departure. The hearing officer did not prepare or serve a written decision or order pursuant to such hearing, but did state an oral decision and order at the conclusion of the hearing.

At the close of the hearing the following colloquy took place between the hearing officer and the defendant:

"By Hearing Officer: I will now state for the record my decision in this matter. My decision will be a part of this record, but will be typed separately."

(At this point the hearing officer stated orally for the record his decision [2] in this matter.)

"Hearing Officer to Respondent: You have heard my decision in this case that you are to be deported from the United States. My decision is final unless you want to appeal to the Board of Immigration Appeals in Washington, D. C. If you want to appeal, you must pay a fee of $25 and you must put down on your appeal wherein you take exceptions to my findings. If you want to make an appeal, the entire record will be forwarded to the Board of Immigration Appeals in Washington, D. C. where the final decision would be rendered. Do you wish to appeal my decision or do you wish to accept it as final? A. I want to accept your decision but I am asking for a stay of deportation until I hear from the Congressional action on my private bill.

"By Hearing Officer: The stay of deportation is not granted by me. I will communicate this decision to the District Director.

"Q. Have you understood all the proceedings here today? A. Yes."

---

**2.** After first having concisely ruled on the issue of deportability which was established, as charged, by the admissions of the defendant himself, the hearing officer devoted the major portion of his decision to a discussion of defendant's eligibility for voluntary departure, finding as follows:

"The respondent has requested the privilege of voluntary departure in lieu of deportation. He shows that he is the beneficiary of a private bill to award him permanent resident status, now pending in the United States Congress. He states he desires to remain in the United States until action is taken by Congress on his private bill. He states that if Congress denies the private bill or adjourns without passing the bill, he is able and willing to leave the United States at his own expense.

"The testimony reflects that the respondent has been convicted and sentenced on two occasions for crimes involving moral turpitude in Canada. In 1945 he was convicted of breaking and entering and given a sentence of six months and a $1,000.00 fine. In 1951 he was convicted of theft and was sentenced to two years imprisonment. He testified that he went to prison in November, 1951 and was re-

leased May 28, 1953. Under Section 101 (f) (7) of the Immigration and Nationality Act, no person can be found to be a person of good moral character who during the period for which good moral character is required to be established is or was one who has been confined as a result of conviction to a penal institution for an aggregate period of 180 days or more, regardless of whether the offense or offenses for which he was confined were committed within or without the period. Under Section 244(e) of the Immigration and Nationality Act, an alien must establish that he has had good moral character for at least five years in order to be granted the privilege of voluntary departure. It will be seen, therefore, that the respondent on April 26, 1957, the date of this decision, can not establish good moral character because he has within the five years preceding this date been confined in a penal institution for a period in excess of 180 days. In view of this, I must find that the respondent is ineligible for the relief requested. His request for voluntary departure is denied. He will be ordered deported from the United States on the charge contained in the Order to Show Cause."

Thereafter on May 1, 1957 a warrant of deportation was issued by the District Director at Miami, Florida, but in the exercise of the discretion vested in him, he stayed the execution of the warrant and order of deportation. The defendant subsequently left the United States and entered Canada on two occasions; on May 10, 1957 and on June 12, 1957. In between these two departures, defendant was advised that his act of leaving the United States deported him and that if he did it again, he would be effecting his deportation and would thereafter have to apply to the Attorney General of the United States for permission to re-apply for admission into this country. Notwithstanding this advice, on June 12, 1957, the defendant was seen leaving the United States at Calais, Maine and thereafter re-entered, and was found in, the United States without having applied for or obtained the permission of the Attorney General to re-apply for admission to this country as required by law.

Thus the uncontradicted and uncontroverted evidence establishes:

1. That the defendant was an alien.

2. That he was deportable.

3. That he departed the United States and went into Canada on May 10, 1957 and June 12, 1957.[3]

4. That he was present in the United States on September 11, 1957 and had not prior thereto obtained permission of the Attorney General to re-apply for admission to the United States.

■■ Clearly an alien against whom a final order of deportation is outstanding executes that order and brings about his own deportation if he thereafter leaves the United States. Section 1101 (g) of Title 8 U.S.C.A. defines deportation as follows:

3. The defendant's statements to the Immigration and Naturalization Service regarding his second entry into Canada on June 12, 1957, and quoted in part below, are of the same tenor as many other statements of his in previous interviews with the Immigration and Naturalization Service. Thus through some sort of "misunderstanding" the defendant informed the Service that he was the plaintiff in a divorce suit, which divorce was granted on grounds of adultery, while in fact he was the defendant; that he had never been refused a visa for permanent residence in the United States while in fact a visa had been denied him because of his criminal record; and that he had last entered the United States about June 1, 1957 whereas after re-entering on June 1, 1957, he again left the United States on June 12, 1957 re-entering once more some time prior to July 18, 1957. However, it is not necessary to resolve conflicts of evidence, since the defendant himself admits his departure on June 12, 1957.

"Q. For what purpose did you go to Saint Stephans, New Brunswick, office on June 12, 1957? A. To get a permit for the car.

"Q. Prior to your re-entering the United States from the Saint Stephans, New Brunswick, Canadian Immigration Office, did you apply to the United States Attorney General for permission to reapply for admission into the United States? A. No.

"Q. You knew that if you went into Canada you had to apply for permission, is that correct? A. Yes.

"Q. Then you did apply for this permission? A. No.

"Q. On July 18, 1957, at the time of your hearing in Baltimore, Maryland, your examiner asked if you had returned to Canada at any time since your last entry on June 2nd or 3rd 1957, is that correct? A. Yes.

"Q. What was your answer to that question? A. No.

"Q. Do you admit at this time that you gave false statements at your hearing that was held in Baltimore on July 18, 1957? A. If I gave a false statement, I was innocent of it. That I never figured seeing that I wasn't out of the Canadian authorities premises that I was in Canada; but as you say now, I was.

"Q. Then you admit you were in the Canadian Immigration Station in New Brunswick, Canada? A. I do, sir.

"Q. Do you have anything further you wish to state at this time? A. No.

"Q. Approximately how many times have you crossed the Canadian border into the United States, Mr. Watterworth, approximately? A. Jiminy Crickets, many, many times. Close to a hundred times.

"Q. Then you know the difference between a United States Immigration Station and a Canadian Immigration Station? A. Yes." Government Exhibit No. 7, pp. 4–5.

"(g) For the purposes of this chapter any alien ordered deported (whether before or after the enactment of this chapter) who has left the United States, shall be considered to have been deported in pursuance of law, irrespective of the source from which the expenses of his transportation were defrayed or of the place to which he departed."

In accordance with this statutory definition and interpreting the statutory authority granted in Sections 1252 and 1253 of Title 8 U.S.C.A. by administrative regulation, it is provided:

"(c) *Permission to depart when ordered deported.* A district director may, in his discretion, permit an alien who has been ordered deported to deport himself from the United States at his own expense and to a destination of his own choice. Any alien who has so left the United States is considered to have been deported in pursuance of law." (8 C.F.R., 1956 Supp., Sec. 243.3(c)).

Lacking permission of the district director to depart or lacking even knowledge of the order of deportation and with no attempt to comply with such order, the alien deports himself upon his departure from the United States when a final order of deportation is outstanding. Corsetti v. McGrath, 9 Cir., 1940, 112 F.2d 719. Thus the issue in the instant case is the validity and finality of the order of deportation issued by the special inquiry officer in Tampa, Florida, on April 26, 1957 and the determination of that issue turns on whether or not the defendant waived his right to appeal the decision of the special inquiry officer. That decision was reached pursuant to a hearing prescribed by Section 1252 of Title 8 U.S.C.A. "Proceedings before a special inquiry officer acting under the provisions of this section shall be in accordance with such regulations, not inconsistent with this chapter, as the Attorney General shall prescribe." The regulations in effect at the time of the hearing involved in the instant case are set forth in 8 C.F.R., 1956 Supp., Section 242—"Proceedings to Determine Deportability of Aliens in the United States: Apprehension, Custody, Hearing, and Appeal" and the pertinent regulations may be paraphrased as follows: Section 242.16(e) provides that the respondent may apply during the hearing for the discretionary relief of voluntary departure and that he has the burden of establishing his eligibility therefor and may submit evidence in support of such application.

Section 242.17 relates to the decision of the special inquiry officer. The decision may be oral or written. The decision shall contain a discussion of the evidence relating to the respondent's eligibility for discretionary relief requested and the reasons for granting or denying the application. Provision is made for a summary written decision where no discretionary relief is requested, or the application for voluntary departure is granted.[4]

Section 242.19 requires notice of the decision to be given. A written decision must be served on respondent by the district director, together with a notice of his right to appeal. A written summary decision shall be served by the special inquiry officer upon respondent at the conclusion of the hearing, and unless appeal from such decision is waived, the respondent shall be furnished two copies of Notice of Appeal and advised of the time for taking an appeal. An oral decision shall be stated to the respondent at

---

4. The defendant has attempted to argue that as a summary written decision is not provided for where, as in the instant case, voluntary departure is denied, the rendition of an oral decision "cannot be regarded as within the spirit of the regulations intended to provide the respondent in deportation proceedings a full hearing with right of appeal." An oral decision is clearly within the letter of Section 242.17(a) and, this court finds, when rendered in accordance with the procedural safeguards provided by Section 242.17(a), as was here the case, is also within the spirit of those regulations promulgated to insure procedural due process.

the conclusion of the hearing. Unless appeal from the decision is "then and there waived", a typewritten copy of the oral decision shall be served in the same manner as a written decision.

Section 242.20 states that the order of the special inquiry officer shall be final except when an appeal is taken to the Board of Immigration Appeals.

Section 242.21(c) allows the respondent ten days in which to prepare and file appeal after receiving service of the decision.

If appeal was not waived, then in the instant case before a final order of deportation could be entered under outstanding regulations there had to be service upon the respondent of a typewritten decision and order together with the prescribed appeal notice, and ten days from receipt of such service had to run before the oral decision, then typewritten, became a final order of deportation. Sections 242.19(a) and (b), 242.20, and 242.21(c). The Government does not contend that the oral decision was reduced to writing, service thereof effected, and ten days time allowed for the taking of appeal but does contend that all the evidence proves beyond any doubt the existence of a valid waiver of the right to appeal.

 It is well established that a waiver is an intentional relinquishment of a known right, and that to make out a case of waiver there must be a clear, unequivocal and decisive act of the relinquishing party. The defendant argues that, having admitted his deportability, the hearing officer's advising him of his right to appeal was meaningless to him as he was not specifically advised of his right to appeal the denial of his application for voluntary departure as distinguished from his right to appeal the order that he be deported; and that, consequently, there was no intentional relinquishment of a known right. That the defendant was highly conversant with the various types of discretionary relief from deportation available to him under the law, that he understood and appreciated their nature and effect and that he properly differentiated between these various remedies intentionally and knowingly choosing one over the other, is forcefully demonstrated by the fact that at the hearing, he asked for precisely the right relief at each stage of the hearing. He first admitted the allegations of the show cause order which established his deportability. He then asked for *voluntary departure*, using that very term, and when that was denied, he asked for the next type of relief available to him, that is, a *stay of deportation*, which was granted to him by the District Director subsequent to the hearing. If the defendant's words ("I want to accept your decision but I am asking for a stay of deportation until I hear from the Congressional action on my private bill") are given their literal meaning, he waived his right to appeal and requested another type of relief which was granted to him. "Permission to depart when ordered deported", "voluntary departure", "stay of deportation", and "suspension of deportation" are all what might well be called terms of art. Each indicates a discretionary type of relief different from the other and they are mutually exclusive. Voluntary departure is granted by special inquiry officers "in lieu of deportation" (8 C.F.R., 1956 Supp., Sec. 244.1). Stay of deportation is granted by district directors and only after a warrant of deportation has been issued upon a final order of deportation (8 C.F.R., Sec. 243.-3(a); 8 C.F.R., 1956 Supp., Sections 243.1(a), 243.3(b) (1)). By asking for a stay of deportation the defendant, of necessity, accepted the decision of the hearing officer not only that he was deportable, a fact that the defendant had admitted from the beginning, but also the decision that he be *ordered deported,* an order which by its very nature constituted a denial of defendant's request for voluntary departure *in lieu of deportation.* Acceptance of the decision acted as a waiver of the right to appeal the decision. Indeed, the requested stay of deportation was also an unequivocal waiver of the right to appeal, as no stay

could be granted until a final order of deportation had been issued and no such order is final if an appeal is taken.

■ The defendant seeks to negate the existence of a clear, decisive waiver by pointing out that when asked whether or not he wished to appeal he responded: "I *want* to accept your decision *but I am asking for a stay of deportation* until I hear from the Congressional action on my private bill." The use of the words "want * * * but", it is urged, indicates an indecisive response and at the most a conditional waiver predicated upon a grant by the hearing officer of a stay of deportation, a request which counsel argues was not granted by the hearing officer. The court agrees with the Government's position that the defendant adopted the word "want" from the language used by the hearing officer in asking the defendant whether or not he desired to appeal,[5] and that the defendant clearly waived that right. The waiver was not, nor could it have been, conditioned upon a grant by the hearing officer of a stay of deportation. Even had the waiver been conditional, which for reasons previously stated this court has expressly found it was not, that condition was met as the stay was granted. The defendant did not stipulate that the stay must be granted by the hearing officer. Indeed, if he had, the condition would have been one impossible of fulfillment as a hearing officer has no authority to grant or deny a stay. Section 243.3 (b) (1) of 8 C.F.R., 1956 Supp., provides:

"(b) *Stay of deportation.* (1) Except as otherwise provided in this part, the *district director* having administrative jurisdiction over the place where the alien is located may, in the exercise of *his discretion,* and for good cause shown, stay the execution of a warrant and order of deportation for such time and under such conditions as *he may deem* appropriate. He may grant such stay upon his own instance, or upon request of the alien. *A request for a stay* by the alien shall be in writing, *shall be filed with the district director,* and shall be supported by an affidavit setting forth the reasons for the request and by such other evidentiary matter as may support the request." (Emphasis supplied.)

Thus the words of the hearing officer that "The stay of deportation is not granted by me. I will communicate this decision to the District Director" rather than being a denial of discretionary relief in somewhat awkward terms were an assertion of lack of authority with the promise that the order of deportation[6] would be communicated to the official having the authority to grant or deny the relief requested.

"The law is well settled that, 'when a motion for a directed verdict of acquittal is made in a criminal case, the sole duty of the trial judge is to determine whether there is substantial evidence which, taken in the light most favorable to the United States, tends to show that the defendant is guilty beyond a reasonable doubt.' Bell v. United States, 4 Cir., 1950, 185 F.2d 302, 310; Glasser v. United States, 1941, 315

5. "Hearing Officer to Respondent: You have heard my decision in this case that you are to be deported from the United States. My decision is final unless you *want* to appeal to the Board of Immigration Appeals in Washington, D. C. If you *want* to appeal you must pay a fee of $25 and you must put down on your appeal wherein you take exceptions to my findings. If you *want* to make an appeal, the entire record will be forwarded to the Board of Immigration Appeals in Washington, D. C. where the final decision would be rendered. Do you *wish* to appeal my decision or do you wish to accept it as final?

"A. I *want* to accept your decision but I am asking for a stay of deportation until I hear from the Congressional action on my private bill." (Emphasis supplied.)

6. By regulation the decision of the special inquiry officer "shall be concluded" with his order (8 C.F.R., 1956 Supp. Sec. 242.17(a)).

U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680." Linden v. United States, 4 Cir., 1958, 254 F.2d 560, 567.

This court finds substantial evidence which, even without construing it in the light most favorable to the United States, shows beyond a reasonable doubt that the defendant waived his right to appeal; that, accordingly, a final and valid order of deportation was outstanding against him at the time of his departure from the United States which departure thereby brought about his deportation in pursuance of law; and that thereafter he was found in the United States without having obtained the permission of the Attorney General to reapply for admission to the United States as required by law.

The motion for a judgment of acquittal is hereby overruled. The court further finds beyond any reasonable doubt that the defendant is guilty, as charged, of violating Section 1326 of Title 8, U.S. C.A.