**UNITED STATES of America,**
Appellee,

v.

**Walter FREEMAN and John Charles Russell, Appellants.**

**No. 8151.**

United States Court of Appeals
Fourth Circuit.

Argued Nov. 16, 1960.

Decided Jan. 16, 1961.

Herbert F. Seawell, Jr., Carthage, N. C. (William L. Osteen of Booth & Osteen, Greensboro, N. C., on brief), for appellants.

Lafayette Williams, Asst. U. S. Atty., Yadkinsville, N. C. (James E. Holshouser, U. S. Atty., Greensboro, N. C., on brief), for appellee.

Before SOPER and HAYNSWORTH, Circuit Judges, and HARRY E. WATKINS, District Judge.

HARRY E. WATKINS, District Judge.

Joseph Darrell Freeman and appellants, Walter Freeman and John Charles Russell, were convicted of carrying on the business of distillers without giving bond as required by law. The indictment was in four counts and charged that on April 27, 1960, they: (1) possessed a distillery set up without having registered same, as required by law; (2) carried on the business of distillers without having given bond as required by law; (3) made and fermented mash fit for distillation on premises other than a distillery duly authorized by law, and (4) possessed distilled spirits in containers which did not have the required stamps affixed thereto. The jury found them guilty of carrying on the business of distillers, but not guilty of the other three charges. Two points are raised upon this appeal.

First, it is said that the verdict of guilty of carrying on the business of distillers is inconsistent with the verdict of not guilty on the other three charges, and that because of such inconsistency, the verdict of guilty cannot stand. Appellants say that if they did not possess the still or the distilled spirits, and if they did not make or ferment the mash, they could not be guilty of carrying on the business of distillers. We do not agree. Consistency in the verdict of a jury is no longer necessary. Dunn v. United States, 1932, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356, 80 A.L.R. 161; Williams v. United States, 1957, 4 Cir., 244 F.2d 303; Pilgreen v. United States, 8 Cir., 157 F.2d 427.

The second and more serious point raised by appellants is the sufficiency of the evidence. We do not believe the evidence was sufficient to support the verdict of guilty to the charge of carrying on the business of distillers.

The evidence is very brief. Only two witnesses testified at the trial, both being called by the government. Defendants did not testify, but made appropriate motions for acquittal, which were denied.

William Queen, Investigator, Alcohol and Tobacco Tax Unit, testified that a day or two prior to April 27, 1960, he located an illicit distillery, and 26 barrels of fermenting mash, in Randolph County, North Carolina. He examined the mash and determined that it was about ready for distillation. He noticed that firewood had apparently been gathered up from broken pieces of wood in the still area. He further noticed that a path and "fresh foot travel" led from the still a short distance to an old woods road, and thence up the old woods road a short distance

to the public road. The public road runs east and west, passing Mt. Lebanon Church to the east and Overton's Store to the west. The old woods road leaves the public road to the south at a point about one mile west of Mt. Lebanon Church, and about one-half mile east of Overton's Store. There were no houses along the road between the church and the store and none either to the north or south for several miles, it being wooded country.

Early on the morning of April 27, Queen and W. W. Wilson, Sheriff of Randolph County, concealed themselves in the woods across the public road from where the old woods road enters the public road. Their evidence as to what they saw and what they did varies in some respects, but, taken in the light most favorable to the government, is as follows:

About 7:25 A.M., they saw a 1950 green Ford coming from the east on the public road, headed west toward Overton's store. The officers were in the woods to the north of the public road and did not recognize the occupants of the car, but did recognize it as a car owned by defendant, Joseph Freeman. About ten or fifteen minutes later Russell and Walter Freeman (father of Joseph Freeman) came walking down the road from the direction from which the car had come, the former walking in the road and Russell walking along the bank.

Walter Freeman and his son lived together, and their home was at least fifteen miles from the still site. Russell lived five to eight miles from the still site, and approximately twelve to fifteen miles from the home of the Freemans. It was a rural section, and the officers testified that they did not know of any work or business activity carried on by defendants, or others, in that section of Randolph County.

When Russell and Walter Freeman reached the old woods road, they turned onto the old woods road and then proceeded along that road to the south in the general direction of the still, apparently entering the path which led to the still, although both officers stated that the still path and the point where the still path left the old woods road were completely outside their vision. Shortly after these two men entered the woods, and intermittently throughout the day, the officers heard noises like the breaking of wood, and "thumping" and "bumping" noises.

About 1:30 P.M., this same Ford again came along the public highway from the east, as it had that morning. It passed the officers' position and, just as it got out of sight, it was heard to stop, and one officer heard an automobile door open and close, and then the car continued on down the road. There is no evidence as to who was in the car, or that anyone got out of it.

About 5:30 P.M., another Ford (1955 model) came along the public road from the east and from the direction of Mt. Lebanon Church. It stopped at the point where the old woods road leaves the public highway. It was then raining and had been raining for some time. The driver of the car was not recognized, but Joseph Freeman, one of the occupants, opened the door, started to get out, but did not do so. He closed the door, and the car continued on in a westerly direction toward the Overton Store. This 1955 Ford was found in Russell's yard the next day when Russell was arrested. A few minutes later, this same 1955 Ford returned from the west, stopped at the same place, remained there a short time, and then proceeded to the east, toward Mt. Lebanon Church. Russell was driving and Joseph Freeman was riding with him. The officers had not seen Russell come out of the woods.

About thirty minutes later this 1955 Ford returned from the direction of Mt. Lebanon Church, but did not stop. About twenty to thirty minutes later, Joseph Freeman came walking out of the woods from the general direction of the still where the old woods road meets the public highway. The officers had not seen him enter the woods. He crossed the public road and walked along the

north bank parallel to the public road, westward toward Overton's Store. About 6:55, the 1955 Ford driven by Russell, returned from the west, stopped at the old woods road, and Walter Freeman, who had come out of the woods from the general direction of the still, got into the car, and the car continued on toward the east. Shortly thereafter, the two officers crossed the public road and continued down the old woods road, in the direction from which Joseph Freeman had come, and thence to the path and to the still. Near the still path, not far from the still, they found three cases of whiskey. They then followed fresh foot marks in the mud down to the still. There was a wood fire under the boiler, "shakers" were still coming from the worm, 200 gallons of spent mash, jars filled with whiskey, and other evidence was found that the still had been in operation recently. The officers found no other path leading to the still except the one by which the officers approached it (which led into the old woods road and then to the public road), and another path which forked off from this first path and led directly to the public road. On this second path, leading directly to the public road, there was also evidence of travel. The point where this second path entered the public road was not visible from where the officers were concealed, making it possible for people in the woods to leave the woods without being observed by the officers, and also making it possible for others to go to and from the still that day, along a path leading directly to the still, without being observed by the officers. The officers testified that they saw evidence of fresh travel on this second path when they examined the area that same day. The officers were not able to find any evidence of travel on the old woods road beyond the point where the path led off going to the still.

The officers left the still undisturbed, and returned to their position of concealment, where they remained all night in search of more evidence. However, nothing else happened, the next morning they were discovered, and they had to abandon the surveillance.

This is not a case where the appellants were found at a still and, therefore, the usual inferences from such presence at a still are not applicable here. In fact, there is no evidence here to show how near the appellants were seen to the still, nor how far the still was from the public highway or to the old woods road. If any of defendants were ever seen within a half-mile from the still, it does not appear from the evidence. There can be no question but that someone was operating a still there that day, but that is not sufficient. For appellants to be guilty of carrying on the business of distillers, it is not alone sufficient to show that they were in the general locality where a still was being operated. To make out a case for the jury under such circumstances, the government must show some facts tending to connect them with the operation of such still. Flight, when the officers appear, or the finding of excess quantities of sugar, yeast, whiskey containers, mash, whiskey, parts of a still, or other evidence, by officers upon search of the premises or automobile of the accused, connecting him with the particular still operation or the liquor business in general, have sometimes been used to corroborate and explain the presence of the accused in the still locality. Sometimes officers produce evidence of transfer, possession or sale of liquor, purchases of material or parts for a still operation, or sometimes they trace clothing or other articles found at the still to the accused, or see him carrying materials or articles to or from a still which are used in the operation. Often, statements of the accused to the revenue officers are introduced. None of these facts, or any other evidence appear to connect appellants in this case with this still or with the liquor business in general.

If the officers were satisfied that appellants were the ones who were operating the still, they could have gone to the still while the still was being operated and identified the guilty parties. In-

stead, they waited all day, lost the direct evidence then available to them, and in the evening went to the still only to find that the operations had ended and the guilty parties had departed. Evidently realizing that they needed more evidence, they returned to their hiding place, where they remained all night in vain. If there was any search of the homes, or the cars, or the person of the accused, to find any evidence to connect them with this still, or the liquor business in general, it does not appear from the evidence. We have found no cases, and none have been cited, where mere presence in the general locality of the still, without some corroborating facts or circumstances to connect the accused with the particular still or the liquor business in general, has been held sufficient to convict one of carrying on the business of a distiller.

It is true that the officers found fresh foot marks in the mud along the path from the woods road down to the still, when they entered the woods about 7:00 P.M., and that it was then raining and had been raining for some time. However, there is no evidence that it was raining when these appellants entered the woods early that morning at about 7:40 A.M., or had rained prior thereto. Officer Queen also makes it clear that fresh foot marks along both paths were observed a day or two before April 27, when he first found the still.

In Cantrell v. United States, 5 Cir., 158 F.2d 517, appellants were convicted of possession of unregistered still and a quantity of mash. The Court held, at page 517:

> "The presence of Cantrell in the vicinity of the still and along the pathway leading to the public road, was not enough, standing alone, to support a verdict of guilty on the first two counts of the indictment."

In Fowler v. United States, 5 Cir., 234 F.2d 697, appellant was convicted of unlawfully carrying on the business of distiller of spirituous liquors, working at an illegal distillery, and unlawfully

making 600 gallons of mash fit for distillation. The Court held, at page 699:

> "* * *, where the appellant was never even present at the still site, but only in the area, at an unidentified distance from the still, * * *."

such evidence would not support a conviction.

In Bell v. United States, 4 Cir., 1950, 185 F.2d 302, 310, Judge Soper quotes with approval Curley v. United States, 1947, 81 U.S.App.D.C. 389, 160 F.2d 229, as follows:

> "The true rule, therefore, is that a trial judge, in passing upon a motion for a directed verdict of acquital, must determine whether upon the evidence giving full play to the right of the jury to determine credibility, weigh the evidence and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt."

Upon this evidence, we cannot say that a reasonable mind might fairly conclude guilt beyond a reasonable doubt. There are suspicious circumstances, "but evidence creating a mere probability of guilt or giving rise to a mere suspicion or conjecture of guilt is not sufficient." Moore v. United States, 4 Cir., 1959, 271 F.2d 564, 568. Here the inference of guilt is so tenuous as to amount to mere speculation. The verdict is conjectural and must be set aside.

Reversed.

HAYNSWORTH, Circuit Judge (dissenting).

Proof of a defendant's momentary presence in the vicinity of a still, without more, is not enough to take the case to the jury. It is not enough because the relation between the proven fact and the inference the prosecution would have the jury draw is extremely tenuous. Bare proof of momentary presence in the vicinity leaves open many other possible inferences.

Here the proof shows much more than the defendants' momentary presence in the vicinity. It discloses a web of circumstances which, I think, would justify reasonable jurors in concluding beyond reasonable doubt that the defendants were operating the still.

There was direct proof that the still was operated that day. When the officers inspected the still late in the afternoon they observed the product of the run, spent mash, a wood fire still burning under the boiler and "shakers" still coming from the worm.

The defendants were seen entering the woods early in the morning. They were proceeding in the direction of the still along an old woods road from which a path led the short distance into the still yard. Late in the afternoon, Walter Freeman was seen emerging from the woods by this same woods road where he was then picked up by an automobile driven by Russell. They were several miles from their homes, and more than eleven hours elapsed between their entry into the woods shortly after 7:30 in the morning and their departure from the area at 6:55 that evening.

From their observation point the officers could not see the still path leading from the old woods road. In the early evening they examined the path, however, and found fresh footprints along it from the woods road to the still site. They found no evidence of any recent travel along the woods road beyond the still path. Shortly after these defendants entered the woods, the officers heard sounds of breaking wood[1] and other sounds which they related to the operation of the still. The sounds came from the direction of the still and were heard intermittently during the morning and the afternoon.

Far from a momentary presence in the vicinity, the testimony, which the jury might have accepted, shows that the defendants entered the woods going toward the still early in the morning.

The evidence on the ground indicates they walked to the still site, not to some other place in the woods. Sounds which the jury could have found were those of preparation for the still's operation began to be heard shortly after the defendants were seen walking toward the still. They were seen leaving the area after the still's run was completed.

These primary observations of the witnesses were lent significance by other circumstances.

The "public road" between Mt. Lebanon Church and Overton's store, a distance of approximately a mile and a half, is a small unimproved dirt road. There was no house on it. On either side of it, totally uninhabited woods extend for miles. The witnesses knew of no business being conducted by anyone in these woods. There was no mine, no quarry, no lumbering operation. The evidence discloses no scenic, or other, attraction in these woods.

It was a rainy day, making the task of tracking the defendants relatively easy and foreclosing any inference that they may have been whiling away a lazy, sunny day.

The defendants, then, were not visiting friends, for no one lived in these woods. They were not working at a mine, quarry, or saw mill, for there were none. They were not equipped with the fishing rods or poles of fishermen, with the guns or dogs of hunters or with a surveyor's level and rod. Other purposes which lead men to spend a long, rainy day in uninhabited woods come to mind, but they require tools and equipment these men did not possess. The still, however, was fully equipped for operation; the mash was ready and the wood for the fire needed only to be broken.

I think the evidence not only justifies the inference that these men were at the still site while the still was in operation, but that it substantially forecloses every other possible inference.

---

1. Wood was used to fire the boiler.

There was a second path into the still site which, that evening, also showed fresh signs of use. It is possible that others than these two appellants and their third co-defendant may have used that path that day and participated in the operation of the still. That possibility, however, does not obliterate the tracks on the first path into the still site or defeat the inference that the defendants were participants in the still's operation.

Crediting circumstantial evidence with the force to which I think it is entitled, I would affirm.