Arthur MOORE, Appellant,

v.

UNITED STATES of America, Appellee.

No. 7906.

United States Court of Appeals Fourth Circuit.

Argued Oct. 6, 1959.

Decided Nov. 2, 1959.

---

George W. Vakos, Virginia Beach, Va. (Richard G. Brydges, Virginia Beach, Va., on brief), for appellant.

W. F. Powers, Jr., Asst. U. S. Atty., Norfolk, Va. (John M. Hollis, U. S. Atty., Norfolk, Va., on brief), for appellee.

Before SOBELOFF, Chief Judge, BOREMAN, Circuit Judge, and FIELD, District Judge.

PER CURIAM.

The indictment in this case, based upon Title 26 U.S.C. §§ 7302 and 5685(b), Internal Revenue Code, charged that Waverly Jordon, Wilbur Jordon, Albert Cecil Foreman, Milton Foreman and Arthur Moore "did unlawfully and wilfully have or possess certain property, to-wit: One low pressure boiler and one gasoline pressure tank, which said property was intended for use in violating the provisions of the Internal Revenue laws or regulations prescribed under such law; that is

to say, the said property was designed and intended to be used for the unlawful distillation of spirits * * *." The case as to all five defendants was tried before the District Court without a jury. The defendant, Arthur Moore, was convicted and the four other defendants were acquitted. From his conviction and sentence Arthur Moore appeals.

Following presentation of the Government's case, counsel for Moore made a motion for a judgment of acquittal, which motion was overruled. Moore did not testify in his own behalf. Whether the Government's evidence was sufficient to sustain the conviction for possession of property *designed and intended* for use in violation of the Internal Revenue laws pertaining to distilled spirits is the only question presented for determination.

As briefly as possible, we shall review the facts as disclosed by the evidence, viewed in the light most favorable to the Government. Johnson v. United States, 4 Cir., 1959, 265 F.2d 496; Linden v. United States, 4 Cir., 1958, 254 F. 2d 560, 567.

On January 15, 1959, at approximately six o'clock in the evening, certain investigators from the Virginia Alcohol Beverage Control Board and the Alcohol and Tobacco Tax Division of Internal Revenue raided an illicit still near Head River Road in Princess Anne County, Virginia. During the raid several persons were arrested, but the officers remained in the area for several hours keeping a dwelling house under surveillance. One of the state officers, Howell, testified that at approximately 10:15 or 10:30 he left the area where the officers had been concealed and started up Head River Road toward their automobile. As he neared a dead-end road which intersects with Head River Road, he observed the headlights of an automobile traveling along the dead-end road toward the intersection. These headlights were turned off approximately one hundred yards from the highway and the vehicle then proceeded in darkness to approximately within ten feet of the intersection where it stopped. Howell further testified that one man got out of the right (or passenger) side of the automobile, went to the rear, removed from the trunk a large object which appeared to be a barrel; that just as this person placed the object in the bushes, Howell flashed his flashlight on the automobile, a 1952 Chevrolet. The person who got out of the car fled and he was neither identified nor apprehended. Arthur Moore was discovered in the automobile and was arrested.

The officers then drove their car (which had been concealed in another lane close by) directly behind the Chevrolet and observed the lights of another automobile coming along the dead-end road toward the highway. This vehicle proved to be a truck in which the four other indictees were riding. One of the officers had remained in the official car while others were hiding in the bushes and when the truck came to a stop, the officers who then approached the truck observed therein what they described as a "low pressure boiler". The four occupants of the truck were also placed under arrest.

The object which had been placed in the bushes was described as a twenty-gallon low pressure gasoline tank, with the "valve stem out of an inner tube placed about middle way welded in it" and the other end having a three-fourth inch outlet. The witness stated: "That valve stem is to put your gas in and hook an automobile tire pump onto it and pump it up, and when the gas comes out, it comes out in vapor form." Officer Howell testified that he had been working with the Virginia A. B. C. Board for nine years ("working whiskey stills, mostly"); that he had seen numbers of "these pressure tanks" and that he had "never seen this type tank used for anything except an illegal distillery".

As shown, all of the defendants named in the indictment were charged with possession of the tank found in the bushes and the boiler found in the truck. The witnesses for the Government admitted that there was no evidence to connect these five defendants with the still which

had been raided earlier in the evening, with the operators who were apprehended when the still was raided, or with distilling activities being carried on in that general area. While Moore did not testify at the trial, he denied to the officers at the time of his arrest that the tank found in the bushes was in the Chevrolet and stated that he did not know the name of the man who escaped. The record is strangely silent as to any further conversation between Moore and the arresting officers concerning any explanation, or lack thereof, of his presence in that vicinity, about twenty-five miles from his home.

Albert Foreman, one of the defendants, testified that he was driving the truck in which the boiler was found; that his co-defendants, Wilbur Jordon and Milton Foreman, had been hunting rabbits in the afternoon of the day on which they were arrested; that they informed him of finding the boiler in the woods and requested him to haul it to his home in his truck; that the boiler weighed about two hundred pounds, was old, rusted and had a hole cut in it about the size of an axe blade; that they expected to sell it for junk along with some other junk which he had collected at his home about three miles away. The other occupants of the truck told substantially the same story. According to their statements, they were not even acquainted with Moore. Certainly there was no evidence to show that Moore had any connection with the boiler or that the other four defendants had any connection with the tank found in the bushes.

The Government's witnesses stated that the boiler was of the type used about a distillery but was fired with coal or coke; that either the pressure tank or the boiler could be used to provide heat necessary to the distilling process, but that under no circumstances would they be used together; that the still which they had raided was completely equipped and neither the tank nor the boiler was a part of the still equipment; that, in fact, the still was not dismantled until about midnight of the night of the raid;

that the boiler could not be used without being repaired although the pressure tank was in usable condition. There was no evidence as to the ownership of the 1952 Chevrolet in which Moore was riding. Early in his testimony, Officer Howell stated that he first saw Moore on the driver's side of the car, but he later testified on cross-examination and in response to questions as follows:

"Q. Mr. Howell, didn't you state at the Commissioner's hearing that Arthur Moore was sitting on the passenger side of the automobile when you shined the light in the car? A. I don't recall, sir. I know he moved from side to side several times.

"Q. After you shined the light on the car; is that correct? A. Yes, sir.

"Q. So you can't say he was driving the automobile or riding as a passenger, can you? A. I can't say he was driving, sir. When I shined my light on, he was first sitting under the wheel and slipped back and forth several times. I don't actually know which one was driving when they came up that lane."

On cross-examination, Officer Howell further testified that there was no apparatus, such as hoses, pipes or burner with the gasoline pressure tank; that although this tank was of the type commonly used at illicit distilleries, *it could have other uses and purposes; that it could be used to cook anything.*

The court stated:

"I find Arthur Moore guilty as charged in the indictment and I find Waverly Jordon, Wilbur Jordon, Albert Cecil Foreman and Milton Foreman not guilty as charged in the indictment.

"I think it is perfectly clear as to Arthur Moore, when a man comes down there in a truck, true, he had another man with him—not in a truck, but in a car, between 10:00 and 10:30 at night, the lights are cut off, the men aren't down there

hunting—true, the other man got out of the car and opened up the trunk and moved the gasoline pressure tank out and rolled it into the brush, but Arthur Moore was at least an accomplice to that and an aider and abetter, and I do not think there is any question as to his guilt."

In a criminal case the accused is protected, at every stage of the trial, with a presumption of innocence and until he is proven guilty beyond a reasonable doubt by proper and competent evidence. No inference of guilt can be drawn from the mere fact that the accused did not testify in his own behalf. These are fundamental principles which require no citation of authority. But other principles have not been overlooked or disregarded in reaching our decision. Circumstantial evidence may support a verdict of guilty, though it does not exclude every reasonable hypothesis consistent with innocence. Holland v. United States, 1954, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150. If it be sufficient to support an inference of guilt and the defendant fails to offer a reasonable explanation consistent with innocence, such failure may be considered by the trier of fact. Wilson v. United States, 1896, 162 U.S. 613, 16 S.Ct. 895, 40 L.Ed. 1090; Jenkins v. United States, 4 Cir., 1932, 58 F.2d 556. It is not necessary, in appraising the sufficiency of the evidence, that this court be convinced beyond a reasonable doubt of the guilt of the defendant. Bell v. United States, 4 Cir., 1950, 185 F.2d 302. The question is whether the evidence, construed most favorably for the prosecution, is such that a jury (or trial judge) might find the defendant guilty beyond a reasonable doubt. Bell v. United States, supra; United States v. Brown, 2 Cir., 1956, 236 F.2d 403; Stoppelli v. United States, 9 Cir., 1950, 183 F.2d 391.

The trial judge noted certain suspicious circumstances concerning the discovery of the gasoline pressure tank in the brush, placed there by some unidentified person, and we agree that these and other circumstances are sufficient to arouse grave suspicion. But there was direct evidence, as shown by the testimony of the Government witnesses, that no one of these five defendants had any connection with the operation of the illicit distillery which had been raided. There was no evidence that Arthur Moore had used the tank for any illegal purpose. It was shown that he did not even know the other four defendants who were found with the boiler in the truck. The officers could not state that the Chevrolet belonged to Arthur Moore or that it was driven by him. The unidentified occupant of the Chevrolet fled, vanishing in the darkness, and was not apprehended, but there was no convincing evidence that Arthur Moore made any effort to escape. Much more significant is the admission by the officer that the pressure tank could be used for purposes other than distilling and could be used to cook anything.

Taken altogether, the proof in this case rises to a high level of suspicion, but evidence creating a mere probability of guilt or giving rise to a mere suspicion or conjecture of guilt is not sufficient. See Philyaw v. United States, 8 Cir., 1928, 29 F.2d 225, 227; 23 C.J.S. Criminal Law § 907(e), p. 154; Fowler v. United States, 5 Cir., 1956, 234 F.2d 697; Dennert v. United States, 6 Cir., 1945, 147 F.2d 286; Garrison v. United States, 5 Cir., 1947, 163 F.2d 874.

As held by this court in Call v. United States, 1959, 265 F.2d 167, 173, when there is a total absence of direct proof of an essential fact, " * * * the evidentiary facts, viewed in the light most favorable to the prosecution, must fairly warrant its inference; if they do not and the inference is so tenuous as to amount to mere speculation, the verdict is conjectural and must be set aside." We do not believe that the sum of these circumstantial elements can support the verdict of guilty.

Reversed.