UNITED STATES of America, Appellee,

v.

Charlie SOLICE, Appellant.

No. 9041.

United States Court of Appeals Fourth Circuit.

Argued Jan. 7, 1964.

Decided June 4, 1964.

---

5. U.S.Const. Art. I, § 8, cl. 17.

Julian T. Gaskill, Goldsboro, for appellant.

Gerald L. Bass, Asst. U. S. Atty. (Robert H. Cowen, U. S. Atty., on brief) for appellee.

Before SOBELOFF, Chief Judge, and BRYAN and J. SPENCER BELL, Circuit Judges.

SOBELOFF, Chief Judge.

At a trial before a jury for a violation of the federal liquor laws, two prosecution witnesses, both investigators for the Alcohol and Tax Division of the Internal Revenue Service, were permitted to testify, over defense objection, about their having applied an unidentified fluorescent salve to a still, and their subsequent examination of the appellant under an ultraviolet lamp. Upon conviction, the defendant appealed, contending that prejudicial error was committed in two respects: first, in allowing nonexperts to testify on a scientific subject and, second, in not holding the evidence insufficient to support the verdict and judgment.

The uncontradicted evidence is that the two revenue agents came upon an illicit distillery in Wayne County, North Carolina, on January 29, 1963, which, though not in operation that day, contained mash ready for distillation. They did not keep the still site under surveillance for a time in order to observe who might visit it, but, in an effort to discover the operators of the illegal enterprise, the agents, before departing, applied the special salve to parts of the distillery apparatus, such as the still cap, the buckets, and the handle of the hoe used to stir the mash. Returning after two days, the same agents, accompanied by another investigator, observed two persons other than the appellant working around the catch tubs of the still. These men they placed under arrest.

The agents then followed the only path to be seen at the still site. At a distance of some 328 paces the path ended at a "hog lot" adjacent to Solice's residence. The appellant was in his yard, and the agents arrested him. The search of the farm as an incident of the arrest yielded several empty half-gallon fruit jar boxes and an empty five-gallon wide-mouth pickle jar which, in the words of the agent, had an "odor of non-tax paid liquor." Solice, and the two others who are not parties to this appeal, were then taken to the investigators' office and examined under an ultraviolet light. This special illumination disclosed traces of fluorescent glow around the corners of appellant's mouth and on his chin.

At his trial the appellant made timely objections to the agents' testimony about smearing the salve on the still equipment and the "glow" which appeared on Solice's face under the ultraviolet light. He also objected to the courtroom demonstration in which the two government witnesses exhibited the fluorescent effect of an ultraviolet lamp upon a salve, ad-

mittedly not the same, but "similar to that used at the still." The basis for these objections was and is the appellant's contention that the uses of the special chemical salve and its response to ultraviolet light are matters involving such scientific knowledge and experience that only experts are competent to give testimonial or demonstrative evidence on the subject.

To the court this is an engaging argument which at some time may require judicial consideration, such as has been accorded other criminological devices— the polygraph, fingerprinting, and the Dermal Nitrate test, to mention but a few. But resolution of this question is unnecessary here. We conclude that the verdict must be set aside for the other reason assigned by the appellant—the patent insufficiency of the evidence.

Nowhere is there any direct evidence that the appellant was ever present at the illegal still or that he was in any way associated with its operation. Our inquiry, then, is whether the circumstances provide a sufficiently firm foundation for an inference of guilt. The proximity of the enterprise to Solice's house and the relatively short path between the two are of slight significance when it is noted that the still was located on land owned by someone other than the appellant. Discovery of the paper cartons and the empty pickle jar is of little evidentiary value since these items are commonplace around a farm. The olfactory achievement of the agent who detected "the odor of non-tax paid liquor" in the empty pickle jar is likewise trivial in this context.

To us the only possible reliance of the prosecution was the testimony about the fluorescent glow on Solice's face, but this, assuming its admissibility, was of minimal probative value. There was no evidence of a glow on his hands or clothing. The government witnesses were unable to state whether the salve which they had applied to the still was the cause of the fluorescent "glow" produced by the ultraviolet lamp when focused on Solice's face. They could give no description of the glow other than to say that it was "distinctive." Nor was there any attempt to show that the substance on the still would produce fluorescence of the same color as that which actually did appear on the appellant's face.

This gap in the proof is crucial since it is a matter of common knowledge that countless substances in everyday use will respond with a glow when exposed to ultraviolet light. Food products, cosmetics, and antiseptics, for example, all fluoresce. But the color of the resulting glow is different for each substance. As a matter of comparison, coffee will show on the skin as a bright blue, while lipstick, not visible under white light, will appear in the orange and red regions of the spectrum. Similarly, mercurochrome gives off an orange-red, while iodine is dark purple in color. Even nicotine stains result in an orange-red hue when subjected to an ultraviolet lamp. See De Ment, "Ultraviolet Light in Criminology," unpublished report for Fluorescence Laboratories, Portland. Oregon; Radley & Grant, Fluorescence Analysis in Ultraviolet Light (3d ed 1939).

In short, the value of the agents' testimony as a basis for an inference that the appellant was present at the distillery is negligible. The so-called "glow" could have been produced by any number of substances, and the inference suggested by the Government has no higher claim than any of the large number of alternatives consistent with innocence. Looking at the evidence most favorably to the Government, there is at best no more than a suspicion of guilt. Moore v. United States, 271 F.2d 564, 568 (4th Cir. 1959); see, e. g., Halfen v. United States, 324 F.2d 52 (10th Cir. 1963); United States v. Freeman, 286 F.2d 262, 266 (4th Cir. 1961). As no conviction may stand upon mere speculation, the judgment must be

Reversed.