**UNITED STATES of America, Appellee,**

v.

**Artis Lee VAUGHT, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Isaac LEE, Appellant.**

**Nos. 72-2207, 72-2208.**

United States Court of Appeals, Fourth Circuit.

Argued March 6, 1973.

Decided Oct. 8, 1973.

Charles Porter, Columbia, S.C. (Glenn, Porter & Sullivan, Columbia, S.C., on brief) for appellant in No. 72–2207.

Isadore E. Lourie, Columbia, S.C. (Bert H. Nisonoff, Forest Hill, N.Y., on brief), for appellant in No. 72–2208.

John K. Grisso, U. S. Atty., and Jack L. Marshall, Asst. U. S. Atty., on brief, for appellee.

Before BOREMAN, Senior Circuit Judge, and BUTZNER and FIELD, Circuit Judges.

BOREMAN, Senior Circuit Judge:

Isaac Lee and Artis Vaught, appellants, appeal their convictions for violation of 21 U.S.C. § 846, conspiring to unlawfully distribute heroin in violation of 21 U.S.C. § 841(a)(1), and for violation of 21 U.S.C. § 841(a)(1) unlawful distribution of heroin.* They complain that the introduction of evidence of the criminal activities of an alleged co-conspirator, Raymond Gore, prior to the formation and existence of any conspiracy was fatally prejudicial. For the reasons hereinafter set forth we conclude that this did constitute error, the convictions should be set aside, and appellants should be awarded a new trial.

In late October 1971 an investigation of illegal drug traffic in the vicinity of the small community of Atlantic Beach, South Carolina, was commenced, prompted by information furnished the Federal Bureau of Narcotics and Dangerous Drugs by one John Henderson. Henderson, a former airman who had been court-martialed by the Air Force for possession of drugs, was employed by the Bureau in an undercover capacity to investigate and report on drug activities in the area. Henderson knew Lee and Vaught and was well acquainted with Raymond Gore, a seller of drugs who was indicted along with Lee and Vaught.

On December 2 and 3, 1971, Henderson and Narcotics Agent Calvin Campbell purchased hereoin from Gore. During the December 2 transaction Henderson asked Gore if he had seen Lee; Gore responded that he had not but that he expected to see Lee soon. Lee was a resident of New York. This was the only evidence even remotely associating Lee with these sales and no evidence was introduced at trial to involve Vaught in the December transactions.

On January 23, 1972, Henderson and Narcotics Agent Ellis Dean attempted to purchase pure heroin from Gore. Gore claimed he did not have enough to fill the order. At Gore's request the three men then drove to Cladbourn, North

---

* For convenience these separate appeals were heard and considered together.

Carolina, where Gore placed several calls to New York in an unsuccessful attempt to obtain the heroin. Gore made additional calls to New York the following day and said he had arranged a meeting and sale for the next afternoon.

On January 25, 1972, Gore, Henderson and Dean were driving in Atlantic Beach and saw Lee and Vaught driving through town. Lee approached the car in which Gore was riding and was asked if he had brought the "stuff." Lee responded that Vaught was holding it and that it could be picked up after Vaught had attended to some personal matters. Gore, Henderson, Dean and Lee spent the next several hours at Skeeter's Lounge, awaiting word of Vaught's return. Around nightfall they learned that Vaught had returned to his apartment across the street from Skeeter's. Gore, Henderson and Dean proceeded to Vaught's apartment. Lee remained at Skeeter's. While in Vaught's apartment Gore obtained the heroin, handed it to Dean, and received $1,500 from Dean. After the sale had been completed, Lee entered the apartment and asked Henderson and Dean if the "stuff" was good. As the group was leaving the room, Gore attempted to give the $1,500 to Lee but Lee refused to accept it.

The grand jury returned a four-count indictment. Count I charged that Lee, Vaught and Gore conspired from on or about December 2, 1971, until April 22, 1972, to distribute heroin in violation of 21 U.S.C. § 846. Among the overt acts listed in this count were heroin sales occurring on December 2 and 3, 1971, and on January 25, 1972. Counts II and III charged only Gore with distribution of heroin on December 2 and 3, 1971, in violation of 21 U.S.C. § 841(a)(1). Count IV charged Lee, Vaught and Gore with distribution of heroin on January 25, 1972, in violation of 21 U.S.C. § 841(a)(1).

Prior to trial defendant Gore entered into a plea bargaining arrangement and agreed to plead guilty to count III of the indictment in return for the Government's promise of *nolle prosequi* as to the other counts pending against him. No formal order was entered severing defendant Gore for the purpose of trial, and it appears from the record that Gore was treated in many respects as though he were on trial with Lee and Vaught as a codefendant.[1]

■■ Once the plea bargaining arrangement had been consummated, counts II and III of the indictment should have been treated as severed for trial purposes. Coile v. United States, 100 F.2d 806 (5 Cir. 1939). Evidence of the alleged sale of heroin by Gore in December was not admissible at the trial with respect to counts II and III and would have been admissible as to count I only if it might tend to prove a single conspiracy existing among Gore, Lee and Vaught at the time of that sale and ending subsequent to the sale on January 25, 1972.[2]

---

1. The prosecutor read the entire joint indictment, including counts II and III, in his opening statement to the jury.

The trial court admitted evidence, over objection, that Gore illegally sold heroin on December 2 and 3, 1971, to federal agents. Neither Lee nor Vaught was allegedly present at that time and there was no evidence that they knew of the sale or were involved in any way with it. The court instructed the jury as follows:

"Now this would be admissible only as to the *Defendant Gore who is not on trial here,* but is charged as a co-conspirator. It is not admissible as any evidence as against *the other two defendants, Vaught and Lee.*" (Emphasis added.)

Later the court received evidence, over objection, of a call placed by Gore to "Ike" on January 24, 1972. The court instructed the jury that "[i]t's evidence that you can consider only as against the co-defendant Gore, himself."

2. There was no evidence that Lee and Vaught conspired with Gore in the December sales of heroin. It is clear that the December transactions were separate from the January transaction and should have been treated separately. Either the December transactions were unrelated offenses and should have been severed when this became apparent to the trial court, Ingram v. United States, 272 F.2d 567 (4 Cir. 1959), or

As hereinbefore stated, appellants complain that evidence concerning the December transactions was improperly admitted, that the admission of this evidence was highly prejudicial, compelling reversal.

 The rule is well settled that when two or more persons have conspired to commit a criminal offense anything said or done by one of them, *during the existence of the conspiracy,* and in furtherance of the common design, may be admitted in evidence against the others. United States v. Spanos, 462 F.2d 1012 (9 Cir. 1972); Laughlin v. United States, 128 U.S.App.D.C. 27, 385 F.2d 287 (1967); United States v. Sapperstein, 312 F.2d 694 (4 Cir. 1963); Glover v. United States, 306 F.2d 594 (10 Cir. 1962). For the rule to apply there must be prima facie proof of the conspiracy as alleged, *i. e.,* the prosecution had to connect Lee and Vaught with a conspiracy existing on December 2 and 3, 1971, to make the evidence of those transactions admissible. United States v. Spanos, *supra;* United States v. Sapperstein, *supra.* The court admitted evidence of the December transactions prior to any attempt by the prosecution to establish the existence of a conspiracy. *This was not error in itself since* the judge may, in his discretion, permit the introduction of evidence as to things said and done by an alleged co-conspirator subject to being connected up and followed by evidence of the existence of .the conspiracy. Beckwith v. United States, 367 F.2d 458 (10 Cir. 1966);

Briggs v. United States, 176 F.2d 317 (10 Cir. 1949). The potential for prejudice arose, however, when no evidence was introduced to connect Lee and Vaught with the December sales. The court took cognizance of this lack of evidence when it struck overt acts A, B and C, those involving the December transactions, from the averments in the conspiracy charge of count I. In a prosecution for conspiracy the acts and words of an alleged co-conspirator prior to the actual formation and existence of a conspiracy are totally irrelevant and should be struck from the record. Walker v. United States, 104 F.2d 465 (4 Cir. 1939). Thus, the court erred in denying the motion to strike the evidence dealing with Gore's acts and statements of December 2 and 3, 1971.[3] Beckwith v. United States, *supra;* United States v. Elgisser, 334 F.2d 103 (2 Cir. 1964), cert. denied, 379 U.S. 879, 85 S.Ct. 148, 13 L.Ed.2d 86. This error in admitting testimony relating to the December sales, which could not have been used in a separate trial on substantive count IV and was inadmissible as to any conspiracy which originated at a later time, was prejudicial to appellants.[4]

The admission of this mass of inadmissible, irrelevant and highly prejudicial testimony unfairly permitted the prosecution to paint Lee and Vaught before the jury as bad men associating with a criminal companion. United States v. Tomaiolo, 249 F.2d 683 (2 Cir. 1957). We think that the prejudice resulting from the admission of this evi-

they constituted a separate conspiracy and should have been charged in a separate count, Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

3. Prior to the trial both Lee and Vaught moved for trials separate from Gore alleging, in part, that evidence of unrelated criminal activities of Gore would likely be offered in evidence. These motions were denied but they should have alerted the trial judge to the potential for prejudice. Ingram v. United States, 272 F.2d 567 (4 Cir. 1959).

Although only Lee moved to strike this evidence at the trial we conclude that the ad-

mission of such evidence constituted plain error and that reversal is required as to Vaught also. Fed.R.Crim.P. 52(b); Cleaver v. United States, 238 F.2d 766 (10 Cir. 1956).

4. "[A] defendant in a trial in which the conspiracy count has been dismissed is likely to be prejudiced in defending the charges in the substantive counts by evidence, particularly hearsay testimony, which was admissible on the conspiracy count but which could not have been used against him in a separate trial on the substantive counts."
United States v. Branker, 395 F.2d 881, 888 (2 Cir. 1968).

dence so permeated and tainted the entire trial as to require a reversal of the convictions of Lee and Vaught on all counts and to entitle them to a new trial.

Reversed and Remanded.