UNITED STATES of America, Appellee,

v.

Wayne Ladell STROUPE, Appellant.

No. 75–1952.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 7, 1976.

Decided May 17, 1976.

James C. Fuller, Jr., Charlotte, N. C. (Chambers, Stein, Ferguson & Becton, Charlotte, N. C., on brief), for appellant.

Douglas M. Martin, Asst. U. S. Atty., Charlotte, N. C. (Keith S. Snyder, U. S. Atty., W. D. N. C., Asheville, N. C., on brief) for appellee.

Before BUTZNER, RUSSELL and WIDENER, Circuit Judges.

BUTZNER, Circuit Judge:

Wayne Ladell Stroupe, appealing a judgment that convicted him of dealing in amphetamine, assigns as error the district court's denial of his motion for a judgment of acquittal. We reverse because, aside from inadmissible hearsay statements of a co-defendant, the evidence is insufficient to sustain his conviction.

Stroupe was charged, along with Randy James Wright, with possessing amphetamine with the intent to distribute it on February 13, 1975, in Gastonia, North Carolina (Count III); distributing the drug on the same date at the same place (Count IV); and conspiring with Wright, David Lloyd Warren, Mark Vernon Warren, and Edgar Hall Sifford from January 27, 1975, to February 27, 1975, in Mecklenberg and Gaston Counties, North Carolina, to furnish amphetamine to Wright for subsequent distribution (Count VII). 21 U.S.C. §§ 812 (Schedule II) and 841(a)(1). All of the defendants except Stroupe pled guilty, and none of them testified in Stroupe's trial.

The essential elements of the prosecution's case were presented by two government agents who had concealed their identities from each of the defendants, including their principal contact, Wright. The agents testified that on February 13, 1975, they went to Wright's home at about 11:30 a. m. and asked about buying some drugs. In their presence Wright dialed a phone number, which they could not identify, and told someone named Wayne that a couple of people wanted to buy an ounce of amphetamine. Wright then told the agents that he would need the money before he could get the drugs. The agents left, but when they returned at about 2:00 p. m., Wright told them the drugs would be available later on in the afternoon. When the agents came back in about an hour, Wright, after again speaking with "Wayne" on the phone, told them they would have to go to another place to pick up the drugs. He then accompanied the agents as they drove at his direction to a trailer park in Gastonia. They stopped near a trailer which, testimony later showed, Stroupe leased. Wright asked for the money to buy the drugs, and one of the agents gave him $460. He went inside the trailer while the agents remained in their car. Wright emerged a few minutes later, along with Stroupe and a girl. As soon as Wright re-entered the car, he gave the agents a plastic bag which, according to a subsequent laboratory analysis, contained amphetamine. He pointed to Stroupe and said, "That is my man I got the stuff from." In the meantime, as Stroupe walked toward another house trailer, he waved to Wright and the agents. Just as they drove off, he waved again. The agents then took Wright home.

Two weeks later on February 27, the agents, accompanied by Wright, went to Charlotte, North Carolina, where they bought amphetamine from David and Mark Warren. On the way home, one of the agents asked Wright whether the amphetamine purchased from the Warrens was as good as that which they had previously bought. Wright responded by asking "You mean the stuff we got from Wayne Stroupe?" This was the only occasion on which Wright disclosed Stroupe's name.

At his trial, Stroupe testified that he was acquainted with Wright, who had visited his trailer on several occasions. He denied selling amphetamine to Wright and stated that he did not know Sifford or the Warrens. He also denied any knowledge of the transaction in Charlotte on February 27.

■ The agents' testimony about Wright's out-of-court statements of February 13 and 27 was offered in evidence to prove the truth of Wright's assertion that he purchased amphetamine from Stroupe. The agents' repetition of the statements was, therefore, inadmissible hearsay unless Wright spoke as a co-conspirator of Stroupe during the course and in the furtherance of the conspiracy. *See* Federal Rules of Evidence 801(c) and (d)(2)(E). *Lutwak v. United States,* 344 U.S. 604, 617, 73 S.Ct. 481, 97 L.Ed. 593 (1953). But a conspiracy between Wright and Stroupe cannot be established by Wright's out-of-court statements made to the agents. There must be proof from another source of the existence of the conspiracy and of Stroupe's connection with it before Wright's statements to the agents can become admissible against Stroupe. "Otherwise hearsay would lift itself by its own bootstraps to the level of competent evidence." *Glasser v. United States,* 315 U.S. 60, 74–75, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942). At this preliminary stage, the conspiracy need not be proved beyond a reasonable doubt. *United States v. Jones,* 542 F.2d 186 at 203, No. 73–2520 (4th Cir. 1976). The government can discharge its burden by introducing "substantial, independent evidence of the conspiracy, at least enough to take the question to the jury."

*United States v. Nixon,* 418 U.S. 683, 701 n. 14, 94 S.Ct. 3090, 3104, 41 L.Ed.2d 1039 (1974) (dictum). We have expressed the same principle in terms of "prima facie proof of the conspiracy," *United States v. Vaught,* 485 F.2d 320, 323 (4th Cir. 1973), or proof by a "fair preponderance" of independent evidence. *United States v. Jones, supra,* 542 F.2d at 203. "Whether the standard has been satisfied is a question of admissibility of evidence to be decided by the trial judge." *United States v. Nixon, supra,* 418 U.S. at 701 n. 14, 94 S.Ct. at 3104; *Carbo v. United States,* 314 F.2d 718, 735–38 (9th Cir. 1963).

■ The government argues that the events of February 13 established Stroupe's participation in a conspiracy with Wright and that this was a sufficient predicate for admitting Wright's February 13 and 27 statements implicating Stroupe. We find this position untenable.

To begin with, there is no proof that the agents knew whether Wright actually phoned Stroupe or merely simulated a call to "Wayne," intending to use Stroupe as an unwitting dupe. The agents were unable to say whether Wright had the amphetamine cached in his own house when they arrived in the morning, whether he procured it from an unknown source during the several hours' delay he requested, or whether he actually obtained it in Stroupe's trailer. The drug may have been concealed in Wright's pocket when he met the agents at his own home in the afternoon. They did not search him before he entered Stroupe's trailer. Wright's trip to the trailer and his brief visit inside with Stroupe could have been, for all the agents knew, a subterfuge to divert attention from Wright's home or his undisclosed source of supply. His brief conversation with Stroupe could have been on an innocuous subject that would not even arouse Stroupe's suspicion or cause him to remember the occasion when he was charged with the crime some four months later. The agents did not hear Stroupe say anything about drugs to Wright, nor did they see him deliver anything to Wright. They did not know how many people were

in the trailer or whether some other occupant dealt with Wright. The agents did not ascertain whether Wright retained the money they had given him, and they did not trace any money to Stroupe.

The agents did not search Wright before he entered the trailer, seek an accounting of the money, or immediately arrest Stroupe because they did not wish to reveal their identities on this occasion. But a good reason for not obtaining evidence cannot serve as a substitute for proof. Had the agents actually witnessed the transaction, the absence of a search and the lack of an accounting would be of little consequence. As it was, the conduct of Wright and Stroupe establishes Stroupe's participation in a conspiracy only if Wright's out-of-court version of the affair is accepted.

We turn next to the events of February 27 when Wright and the agents bought amphetamine from the Warrens.* This aspect of the conspiracy charged by the government is like a wheel with Wright at the hub and Stroupe and the Warrens as the spokes. This arrangement is a single conspiracy only when the activities of each of the spokes is interrelated, as when the success of each of the activities depends on the success of the others. *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); *see Blumenthal v. United States*, 332 U.S. 539, 558, 68 S.Ct. 248, 92 L.Ed. 154 (1947) (dictum). Here, there is no proof that Stroupe was in any way connected with Wright's transaction with the Warrens or that he aided, by agreement or otherwise, the acquisition of the drugs from the Warrens. Indeed, the government does not now urge that the purchase from the Warrens implicated Stroupe.

We conclude, therefore, that the events of February 13 and 27—standing alone, unexplained by Wright's statements to the agents—do not provide independent proof by a fair preponderance of the evidence

that Stroupe conspired with Wright. For this reason, Wright's statements were inadmissible hearsay. *Glasser v. United States*, 315 U.S. 60, 82, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Vaught*, 485 F.2d 320 (4th Cir. 1973); *cf. United States v. Nixon*, 418 U.S. 683, 701 n. 14, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); *United States v. Jones*, 542 F.2d 186, 202, No. 73–2520 (4th Cir. 1976).

 The test for deciding a motion for a judgment of acquittal is "whether there is substantial [direct or circumstantial] evidence which, taken in the light most favorable to the United States, tends to show that the defendant is guilty beyond a reasonable doubt." *Bell v. United States*, 185 F.2d 302, 310 (4th Cir. 1950). Measured by this standard, the evidence of events—divorced from Wright's statements—fails to establish that Stroupe conspired with Wright to deal in amphetamine. Any inference to the contrary, resting, as it must, solely on the events of February 13, is so tenuous that it is speculative and leaves us with no more than a suspicion of guilt. The verdict of guilty on the conspiracy count, therefore, cannot stand. The government's evidence of events, unembellished by hearsay, was no more sufficient to prove the substantive crimes of possession and distribution on February 13, as charged in Counts III and IV, than it was to prove the conspiracy charged in Count VII. *United States v. Solice*, 332 F.2d 626, 628 (4th Cir. 1964); *Moore v. United States*, 271 F.2d 564, 568 (4th Cir. 1959). The motion for a judgment of acquittal should have been granted as to all counts. Accordingly, the judgment is reversed and the case is remanded for dismissal.

DONALD RUSSELL, Circuit Judge (dissenting):

I dissent.

In my opinion, the admissible evidence, though circumstantial, is sufficient to up-

---

* Sifford was also charged, along with Wright, with substantive offenses of possession and distribution of amphetamine on January 27, 1975, in Counts I and II of the indictment. At Stroupe's trial, the government made no effort to show that Stroupe had conspired with Sifford. Indeed, it offered no evidence concerning Sifford at all.

hold the verdict of guilty. The standard in this Circuit on sufficiency of evidence is that a guilty verdict "must be sustained if there is substantial evidence, taking the view most favorable to the government, to support the findings of guilt." *United States v. Sherman* (4th Cir. 1970) 421 F.2d 198, 199, *cert. denied* 398 U.S. 914, 90 S.Ct. 1717, 26 L.Ed.2d 78 (1970); *United States v. Taylor* (4th Cir. 1973) 482 F.2d 1376, 1376–7. The majority opinion, though professing adherence to this standard, appears to me to have abandoned it in this case.

Setting aside for the moment the question of admissibility of Wright's statements to the agents, the evidence is sufficient, I submit, to sustain the verdict. It is undisputed that Wright, when approached by two undercover agents seeking to buy amphetamines, telephoned a party from whom he indicated he could secure amphetamines since the latter had been his source in the past. This person was addressed as "Wayne" on the telephone. As repeated by Wright, "Wayne" demanded payment before delivery. The agents told Wright they would secure the purchase money and return later. After the agents had returned with the money for the purchase, Wright again placed a call to the same person to whom he had earlier talked, addressing him again as "Wayne." Following his conversation with "Wayne," Wright said he would take the agents to "his man's house" to get the drugs. Traveling with the agents in their car, he directed them to the trailer which admittedly belonged to and was occupied by Wayne Stroupe. Wright took the money which the agents had given him, went into the trailer, and emerged in less than five minutes in the company of the defendant Wayne Stroupe and a young lady. As Wright drove off with the agents, Stroupe waived to them. As soon as he got back into the car, Wright gave the agents a bag containing amphetamines. It is conceded that there was a telephone in the defendant Stroupe's trailer, and that Wright had visited Stroupe there a number of times. It, also, seems clear that Wright was a well known dealer in drugs.

The majority opinion dismisses all of these facts with the comment that there is no proof that Wright did not use Stroupe "as an unwitting dupe" and that the visit with Stroupe could have been a "subterfuge." It is difficult, if not impossible, to see the point of this observation. Why would Wright want "an unwitting dupe"? It could not have been to conceal his own connection with the transaction. That was admitted. He was a distributor who purchased and sold to others. *He was making the sale.* And what would have been the purpose of any "subterfuge"?

The majority adds that the government's case is "untenable" since the agents did not search Wright before he entered the trailer, and did not trace any of the money to Stroupe. This position implicitly accepts the holding in *Panci v. United States* (5th Cir. 1958) 256 F.2d 308, which was forcefully argued by Stroupe's counsel. Panci reversed a conviction due to the fact that certain hearsay statements were found to be the only evidence of a conspiracy. In that case, agents had observed Panci pass a bag to a convicted narcotics violator, but there was no proof that the bag contained narcotics. The Court felt, as did the majority here, that the conviction could have been sustained if the government had given the informer marked bills, made sure that he could have obtained narcotics from no other source, and then found the marked bills on defendant after the arrest. *Panci,* however, was dismissed as an authority in *United States v. Manfredi* (2d Cir. 1960) 275 F.2d 588, 592, *cert. denied* 363 U.S. 828, 80 S.Ct. 1599, 4 L.Ed.2d 1523 (1960), with the comment, "we do not wholly approve of *Panci.*" I find this comment appropriate.

There is no reason to conjecture that Wright dealt with another occupant of the trailer as does the majority opinion. It was Stroupe's home, and both he and his fiancee left with Wright. There was no indication that anyone else was present in the trailer. Stroupe's parting wave is indicative of his contact with Wright. As the majority suggests, other inferences may be drawn from

his conduct, but, as *Chappell*[1] directs, a guilty verdict does not require their exclusion. After all, " '[I]t is not necessary that the trial court or this court be convinced beyond a reasonable doubt of the guilt of the defendant. The question is whether there is substantial evidence upon which a *jury* might justifiably find the defendant guilty beyond a reasonable doubt.' "[2]

It is thus unnecessary to consider Wright's statement to the agents made after the deal, though I am by no means certain that the statement was not so closely related to the entire transaction as to be admissible under the res gestae exception to the hearsay rule. This exception "permits the reception of spontaneous declarations made under the stress of excitement produced by a startling event and made before the declarant has had sufficient time to reflect on the effect of the statement." *United States v. Mountain State Fabricating Co.* (4th Cir. 1960) 282 F.2d 263, 266. Certainly, the statement "that is my man [pointing to Stroupe] I got the stuff from" which was uttered seconds after an illegal narcotics transaction would fall into this exception. *See, United States v. Bell* (6th Cir. 1965) 351 F.2d 868, 872, 873, *cert. denied* 383 U.S. 947, 86 S.Ct. 1200, 16 L.Ed.2d 210 (1966). Under the Federal Rules of Evidence, this statement would meet the test of a "present sense impression" or "excited utterance," and thus not be hearsay at all. Fed.R.Evid. 803(1) and (2).

Therefore, the record as a whole (with or without the statement) contains substantial evidence to support the jury's verdict of guilt.

---

1. *United States v. Chappell* (4th Cir. 1965) 353 F.2d 83, 84 (quoting *White v. United States*, 279 F.2d 740 at 748—emphasis in opinion).

2. *White v. United States* (4th Cir. 1960) 279 F.2d 740, 748, *cert. denied* 364 U.S. 850, 81 S.Ct. 96, 5 L.Ed.2d 74 (1960).